# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

## CIVIL RIGHTS COMPLAINT FORM FOR
## PRO SE, PRISONER LITIGANTS IN ACTIONS UNDER
## 28 U.S.C. § 1331 or § 1346 or 42 U.S.C. § 1983

Deonsey Lonte Johnson ,

Inmate ID Number: P13172 ,

_____ ,

*(Write the full name and inmate ID
number of the Plaintiff.)*

Case No.: 5:22CV229-TKW/MJF

*(To be filled in by the Clerk's Office)*

**v.**

NYC/Greenville Correctional Facility et al,

(Warden) Scott Middlebrooks ,

(Colonel) H. Hodges ,

*(Write the full name of each
Defendant who is being sued. If the
names of all the Defendants cannot
fit in the space above, please write
"see attached" in the space and
attach an additional page with the
full list of names. Do not include
addresses here.)*

Jury Trial Requested?
☑ YES  ☐ NO

"SEE ATTACHED"
...additional Defendants etc

## I. PARTIES TO THIS COMPLAINT

### A. Plaintiff

Plaintiff's Name: Deonsey Lonte Johnson    ID Number: P13172

List all other names by which you have been known: _____

_____

Current Institution: Walton Correctional Institution,

Address: 691 Institution Road,

Defuniak Springs, FL. 32433

### B. Defendant(s)

State the name of the Defendant, whether an individual, government agency, organization, or corporation. For individual Defendants, identify the person's official position or job title, and mailing address. Indicate the capacity in which the Defendant is being sued. Do this for *every* Defendant:

1. Defendant's Name: MTC / Graceville Correctional Facility et al.

   Official Position: Private Correctional Provider — (Contractor)

   Employed at: Graceville Correctional + Rehabilitation Facility

   Mailing Address: Graceville Correctional Facility, 5168 Ezell Road,

   Graceville, Florida 32440

   ☑ Sued in Individual Capacity     ☑ Sued in Official Capacity

2. Defendant's Name: Scott Middlebrooks

Official Position: Warden

Employed at: Graceville Correctional & Rehabilitation Facility

Mailing Address: Graceville Correctional Facility, 5168 Ezell Road, Graceville, Florida 32440

☑ Sued in Individual Capacity    ☑ Sued in Official Capacity

3. Defendant's Name: H. Hodges

Official Position: Colonel / "Chief of Security"

Employed at: Graceville Correctional & Rehabilitation Facility

Mailing Address: Graceville Correctional Facility, 5168 Ezell Road, Graceville, Florida 32440

☑ Sued in Individual Capacity    ☑ Sued in Official Capacity

*(Provide this information for all additional Defendants in this case by attaching additional pages, as needed.)*   SEE "ADDITIONAL PAGES" →
--- "Additional Defendants" ---

## II. BASIS FOR JURISDICTION

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution" and federal law. Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), you may sue federal officials for the violation of certain Constitutional rights.

# "ATTACHMENT", page #1 (a)

...additional Defendants:

(Lieutenant) Snell,
(Lieutenant) Owens,
(Nurse) M. Thomas,
(Y-Dorm Unit Manager) Lee,
(Sergeant) S. Kutes,
(Officer) L. Gainer,

"Jury Trial Requested"
☒ Yes    ☐ No

...end of Attachment.]

Are you bringing suit against (*check all that apply*):

☐ Federal Officials (*Bivens case*)   ☑ State/Local Officials (*§ 1983 case*)

## III. PRISONER STATUS

Indicate whether you are a prisoner, detainee, or in another confined status:

☐ Pretrial Detainee   ☐ Civilly Committed Detainee

☑ Convicted State Prisoner   ☐ Convicted Federal Prisoner

☐ Immigration Detainee   ☐ Other *(explain below)*:

N/A

## IV. STATEMENT OF FACTS

Provide a short and plain statement of the *facts* which show why you are entitled to relief. Describe how *each* Defendant was involved and what each person did, or did not do, in support of your claim. Identify when and where the events took place, and state how each Defendant caused you harm or violated federal law. Write each statement in short numbered paragraphs, limited as far as practicable to a single event or incident. *Do not make legal argument, quote cases, cite to statutes, or reference a memorandum.* You may make copies of the following page if necessary to supply all the facts. Barring extraordinary circumstances, no more than five (5) additional pages

SECTION I. – <u>PARTIES TO THIS COMPLAINT</u> (additional Defendants):

4. <u>Defendant's Name</u>: "Snell"
   Official Position: Lieutenant
   Employed at: Graceville Correctional & Rehabilitation Facility
   Mailing Address: Graceville Correctional Facility, 5168 Ezell Road,
                    Graceville, Florida 32440

   ☑ Sued in Individual Capacity      ☑ Sued in Official Capacity

5. <u>Defendant's Name</u>: "Owens"
   Official Position: Lieutenant
   Employed at: Graceville Correctional & Rehabilitation Facility
   Mailing Address: Graceville Correctional Facility, 5168 Ezell Road,
                    Graceville, Florida 32440

   ☑ Sued in Individual Capacity      ☑ Sued in Official Capacity

6. <u>Defendant's Name</u>: "M. Thomas"
   Official Position: Nurse
   Employed at: Graceville Correctional & Rehabilitation Facility
   Mailing Address: Graceville Correctional Facility, 5168 Ezell Road,
                    Graceville, Florida 32440

   ☑ Sued in Individual Capacity      ☑ Sued in Official Capacity

                              SEE "ATTACHMENT" →
                              ...additional Defendants

SECTION I. — "PARTIES TO THIS COMPLAINT"   (additional Defendant):

**7.** Defendant's Name: "Lee"
Official Position: Y-Dorm Unit Manager
Employed at: Graceville Correctional & Rehabilitation Facility
Mailing Address: Graceville Correctional Facility, 5168 Ezell Road,
Graceville, Florida 32440

☑ Sued in Individual Capacity        ☑ Sued in Official Capacity


**8.** Defendant's Name: "S. Kyles"
Official Position: Sergeant
Employed at: Graceville Correctional & Rehabilitation Facility
Mailing Address: Graceville Correctional Facility, 5168 Ezell Road,
Graceville, Florida 32440

☑ Sued in Individual Capacity        ☑ Sued in Official Capacity


**9.** Defendant's Name: "L. Gainer"
Official Position: Officer
Employed at: Graceville Correctional & Rehabilitation Facility
Mailing Address: Graceville Correctional Facility, 5168 Ezell Road,
Graceville, Florida 32440

☑ Sued in Individual Capacity        ☑ Sued in Official Capacity


...End of SECTION I. ]

should be attached. *Facts not related to this same incident or issue must be addressed in a separate civil rights complaint.*

1. During the time period / incidents giving rise to my injuries / said violations as complained of hereinafter, I was incarcerated at Graceville Correctional + Rehabilitation Facility (a private Facility, owned, and operated by MTC, a private corporation / entity), due to my criminal court conviction in re: Circuit Court case #05-CF-5751.

2. MTC, as a "private contractor", was contracted by the Florida Dept. of Corrections (an agency of the state of Florida) and thereby exercised "state action", whereas, its duties entailed the same "care, custody, and control" of the inmates housed at its Facility (Graceville Correctional Facility), as required of D.O.C. Facilities / Institutions housing the same Classifications of inmates. See F.A.C. 33-205.101 (3); and F.A.C. 33-205.101 (7).

3. MTC, as a "private contractor" / "corporate entity, breached its contract / duties as prescribed by F.A.C. 33-205.101 (3) & (7); and the 8th Amendment of the U.S. Constitution, whereas, it knowingly operated Graceville Correctional + Rehabilitation Facility (located at: 5168 Ezell Road, Graceville, FL.

32440) under exceedingly dangerous conditions of which violated my legally protected rights to personal safety / humane conditions of confinement, and ultimately resulted in substantial injuries to my person.

---

4. MTC, by and through virtue of it's contract with Florida D.O.C., acted "under color of state Law", when it deprived me of my right as guaranteed by the 8th Amendment of the U.S. Constitution. ...i.e. "personal safety / humane conditions of confinement."

---

5. MTC, as a "private prison corporation," first loyalty was to it's stockholders, rather than the public's interest / rights of it's inmate population, whereas, it acquiesed in an affirmative custom / practice of it's employees, which encompassed: "Routine Denial of Protective Management"; "Routinely Partial / Inadequate Investigations into allegations of staff misconduct," to include: "Officer Sanctioned hits / assaults"; and "Denial / Delay in providing Medical Treatment for serious injuries ... See Exhibit—A, C—H(2)

---

SEE "ATTACHMENT"→ "facts continued"→

---

6. During the approx. 6 months I was housed in B-Dormitory at Graceville Correctional Facility, I was subjected to "exceedingly dangerous conditions". Said conditions were "widespread" in B-4, as such deprivations/abuses were obvious, flagrant, rampant, and of continued duration, as they existed prior to, during, and after the actual incidents giving rise to the injuries(s) I sustained on Feb. 5th, 2022; Feb. 11th, 2022; and Feb. 12th, 2022.

7. Moreover, during my approx. 6 month stay at Graceville (Sept 15th - Mar. 14th, 2022), MTC, as a "Private Correctional Provider," and sole beneficiary of any, and all cost-saving measures, did employ, and acquiesce in, such cost-saving measures (which were detrimental to the safety of the inmate population), whereas, it operated Graceville Corr. Facility with an understaffed workforce (one officer in the officer's station & one on the floor etc.), and no stationary metal detector at center-gate, or other strategic point within the facility, despite the widespread increase of armed assaults, and obvious need for such security measures within the prison setting/correctional environment.

8. In addition to the inherent/distinct compromise to inmate "safety caused by the absence of a stationary/routine metal detector at center-gate (which allowed/promoted the free-flow & exchange of weapons later utilized during assaults), a direct consequence of said understaffed/depleted workforce was that, supervising officials, such as Warden Middlebrooks, and Colonel H. Hodges were reluctant to, and at times, blatantly refused, to hold accountable, punish, or correct employees under their supervision, for acts of misconduct, despite the evidence, obviousness, or egregiousness of such conduct. SEE Exhibit(s) - C, D, E - H(2)

9. Thus, it was within said environment, and attributable to said lack of oversight, and absence of corrective & security measures, that Lt. Snell,

4. Owens, Y-Dorm Unit Manager Lee, S. Kyler & L. Grainer acted with impunity in violating my rights, inmates freely exchanged weapons, weapons flourished about abundantly, armed assaults became rampant & nearly daily occurrences, and I was attacked with a weapon/injured as a result, on Feb. 5th, 2022, Feb. 11th, 2022, and Feb. 12th, 2022.

10. Graceville Correctional Facility was exceedingly dangerous/unsafe, and needlessly so, to the point it amounted to an unconstitutionally inhumane condition of confinement, violative of my 8th Amendment Rights.

11. On Jan. 18th, 2022 (shortly before master-roster count), inmate Rashe Proby #W00438 entered my cell (B4-210²), and after conversing with my cellmate a while, attacked me. At this time, I managed to fight off said attack, and suffered no physical injuries worthy of notation etc.

12. On Jan. 20th, 2022, while standing at the front door of B4 seeking permission to send out legal documents, inmate Rashe Proby #W00438 attacked me (weapon in hand), and during the ensuing scuffle, I'd managed to take said weapon (shank) from him, at which time 3 to 4 other inmates drew homemade weapons and approached/attempted to circle me, while yelling threats... Inmate Matthew Felder intervened and created a distraction etc., until I could get up the stairs, to my cell.

13. Said incident occurred directly infront of B-dorm officer's station, between 7:00 - 9:30 Am, in B4 & in the presence of B-Dorm Unit Manager, and plain view of the two officers working the officer's station at said time, and although inmate Proby re-armed himself with a larger (approx. 12 inch) weapon/shank, & waived it around etc., no report was made by witnessing staff, and no confiscation, or search for weapon(s) was conducted...

14. On Jan. 21st, 2022, at approx. 4:15 - 5:30 Am, the inmate housed in

B4-214, attacked / beat the inmate housed in B4-207 across the head + upper torso area, with a lock-in-sock etc., repeatedly / continuously, until inmate Rashe Proby intervened / stopped it etc. However, upon arrival of the Lt. working on said morning, he placed only Proby in confinement, stating: "If they wanted to fight, you should've let em kill each other!" Neither of the other two inmates that were actually fighting were taken to confinement, questioned, assessed by medical, or otherwise... Moreover, no search for a weapon was conducted.

15. On Feb. 5th 2022, at approx. 7:00-10:00 AM (while working B-Dorm) Sergeant S. Kyles, along with Officer L. Grainer came over B4st intercom system (after opening the door / letting their hallway orderly from B1 enter along with B4st orderly), and ordered / encouraged said orderlies: "beat his ass!" ... "fuck his pussy ass up!" ...indicating inmate Terrell Surancy *M08737. (Kyles + Grainer both knew that I myself, along with inmate Felder, and Surancy were acquaintances, as we were regularly seen together / hanging out)

16. Consequently, one of the orderlies (housed in B4-205) entered Surancy's cell (#206) along with the orderly housed in B1, at which time Surancy was attacked by the B4 orderly + fight ensued between the two etc.. However, immediately thereafter, and upon Surancy exiting the cell, and Matthew Felder attempting to exit behind, Felder was attacked by the two orderlies, at which time, the B1 orderly slammed him on his head etc. which knocked him out / unconscious.

17. Upon seeing this, and Felder unconscious, with both orderlies kicking and stomping him, I entered cell #206 to stop them from doing so, as I feared that Felder was in imminent danger of death, or great bodily harm at the hands of said assailants.

18. Upon my entering Cell #206, both orderlies, along with approx. 2-3 other inmates (who) entered the cell behind me, turned the attack on me. At this time, amist said attack upon me with closed fist etc., several of them produced handmade, ice-pick type shanks/weapons, in which they utilized to stab me with "twice". ...Once in my upper left rib cage area, and again in my right hip. (Louis Cosiano + the B1 orderly are the ones that actually managed to stab me...)

19. During said altercation, I managed to wrestle Cosiano's shank from his grasp, and as I'd tried to retreat to no avail / saw no other recourse, and feared imminent death or great bodily harm to myself, I'd struck several times with the object in my hand, striking 4 of my assailants, (Louis Cosiano) twice or more etc...

20. At this time, all four to five of the individuals who was attacking me fled from the room + down the stairs etc.. However, as Officer Grainer now stood at the door of B4 holding it open for the B1 orderly, he was able, (as he was assisted by L. Grainer) to flee the quad/scene prior to the arrival of the response team...

21. Immediately following the attack upon me and Felder, Surrancy returned to his cell where Felder still lay on the floor unconscious. After several attempts to awake Felder by both, me and Surrancy, to no avail, Surrancy + I positioned ourselves outside / in front of cell #206 and thereby creating a scene in order to prompt S. Kyles + L. Grainer to call the OIC / response team. No report / incident report submitted by S. Kyles, or L. Grainer referenced or mentioned either of their two hallway orderlies, although clearly / visibly involved etc., in the armed altercation, that had transpired. (weapons were visible, as I had the one I'd took from Cosiano, and Surrancy one he'd produced etc.) We were out numbered, scared, and Felder down.

22. Lt. Snell arrived to B-dorm, Quad 4 on Feb. 5th, 2022, at approx. 7:30 - 10:30am (in response to an armed altercation), an although she became aware of the fact that "7" inmates had been involved in said armed altercation with several of us receiving stab wounds, only "3" of us were taken to Confinement etc., - Me, Surrancy, and Cosiano, with Cosiano being the only inmate to receive medical treatment for his injuries on Feb. 5th, 2022, despite the fact that I'd advised Lt. Snell personally, that I'd been attacked by 4 to 5 inmates, the two hallway orderlies included, and stabbed twice.

23. Following said incident, I was escorted to medical, but turned around & taken to the OIC's office (prior to any pre-confinement physical being conducted) at which time I'd spoken with Lt. Snell. At this time she'd been reviewing camera footage of said incident etc. I'd advised Lt. Snell, at such time, that I'd been attacked by said inmates, after trying to render aid/assistance to Matthew Felder who'd also got attacked, and I'd been stabbed by two of said inmates, and now needed medical attention for said injuries etc.

24. In response to my request for medical attention, Lt. Snell told me to "stop complaining", "cause she didn't feel like doing a lot of paperwork". Lt. Snell did not direct that I be seen/assessed, or treated by medical for my injuries as complained of, but rather, she'd continued reviewing the camera footage via the computer screen in front of her. I recall Lt. Snell commenting: "that's a shank in Surrancy's hand!" - "Damn, y'all rocked out for real huh?" Following said conversation/examination of said video footage, Snell directed that I be taken to Confinement.

25. Despite the fact said incident had involved "7" inmates, and several weapons, (two of which she'd seen on camera herself),

H. Snell did not return + search B4 for said weapons, or the one left that I'd advised of being stabbed with, nor did she direct a subordinate to do so...

26. Following my conversation with Snell (in the OIC's office), I was taken back to medical for pre-confinement physical, at which time I'd advised Nurse M. Thomas that I'd been stabbed twice, with an ice-pick type weapon (in hip + upper left rib-cage), and that said puncture wound hurt extremely bad/ seemed to be internal. In response Nurse Thomas stated; "Better you than me, that's what ya'll get for fighting". Nurse Thomas did not assess, nor treat, or note said injuries as complained of, but rather, she only checked my temperature and blood pressure, thus, concluding my pre-confinement physical. No medication etc. was provided for the pain either...___   SEE Exhibit - A

27. Upon being placed in Confinement on Feb. 5th, 2022, under the direct care/ Custody/ Supervision of (then Sergeant, now Lieutenant) Owens, I'd advised him that I'd been stabbed at least twice, with an ice-pick type weapon, refused treatment by Nurse Thomas, but that I needed emergency treatment for my injuries.

28. I'd notified Sergeant Owens of said injuries/ medical needs while in the shower of Y-Dorm, Quad 1 waiting cell assignment, and repeatedly from Feb. 5th - 6th, to no avail.

29. Each time I'd advised Owens that I had holes in me, was in pain etc., and showed him the bloody holes in my side/ hip including speckt of blood (on a piece of tissue) I coughed up in his presence, he simply told me to sign up for sick-call etc.

30. At no time, did Owens Seek medical attention / treatment for my injuries complained of, and showed to him, despite the fact that said wounds were "objectively serious."

31. In fact, on Feb. 5th, 2022, while standing at my cell door in Confinement (Y3-103), conversing with me in re: my complaints / request(s) for medical attention, Owens stated: "Because this is a private Facility, we are not allowed to report everything that goes on. It doesn't look good on paper, and if MTC loses it's contract, I'm out of a job... You gotta just tough it out + sign up for Sick-call." ... Emergency care was not offered, or provided.

32. Consequently, it wasn't until Feb. 7th, 2022, (after appealing to Owens, to no avail & other Staff / Nurses over the weekend), that Nurse P. Vickery had Y-Dorm's Unit Manager "Lee" pull me from my cell, so she could assess / note my injuries. However, by this time, the two ice-pick holes had scabbed over, and as such, to naked eye / outer appearance etc., said puncture wounds appeared to be, and was noted as "two small scratches"... SEE Exhibit-A

33. The two-day delay in assessment of said ice-pick wounds / punctures, constituted denial of Medical Treatment for objectively serious injuries / medical conditions, whereas, by the time said injuries were assessed by Nurse Vickery, they could only been seen as, and therefore, written off as small scratches etc., due to the scabbing process that had taken place over said period of delay.

34. On Feb. 8th, 2022, Y-Dormitory's Unit Manager "Lee", came to my confinement cell door (Y1-103), with a release list, at which time held told me and my cellmate Terrell Surrency #M08737, to "pack it up", indicating our release back to general population.

35. At this time, me and my cellmate ("Surancy") "refused" to be released. We cited safety concerns, then requested protective management. In support of said request for protective management, I'd informed Unit Manager Lee of the incident, wherein I'd been attacked & stabbed by 4 to 5 inmates in B4 dormitory.

36. In response to my refusal & request for protective management "Lee" advised me and Surancy that we'd be receiving disciplinary reports for refusing to leave confinement etc. ___ No protective management process initiated / provided by Lee, despite my requests, and the information I'd revealed to him.

37. Consequently, just 3 days later (Feb. 11th 2022) I, along with Terrell Surancy, was released from confinement (without a review of said protective management issue issue / safety concerns by the ICT board etc.), and placed back in B4 dormitory, wherein I'd been attacked / stabbed (receiving an approx. 5½ inch laceration on my left arm, neck, back, and left shoulder injuries), within 10-15 minutes after returning to B4, by a group of approx. 5 inmates in which I'd expressed fear of to Lee. (Two out of said group was actually involved in the Feb. 5th incident personally.)

38. Moreover, I was attacked again (in B4) the very next day (Feb. 12th 2022), also (as a consequence of Unit Manager Lee's failure to honor / note my request for protective management) by a group of inmates (one of whom had been involved with, and stabbed me during the Feb. 5th 2022 incident I'd described to Lee) During said Feb. 12th 2022 attack, I was punched, repeatedly, and placed in a headlock / choke-hold, wherein, my left eye, neck, back, and left shoulder were injured.

39. On Feb. 11th, 2022, Lt. Snell authorized that I, along with Terrell Surrancy, be released from Confinement, and placed back in B-Dorm, Quad 4, wherein I'd been attacked / stabbed on Feb. 5th, 2022, no weapons search conducted, two of my assailants still resided, and a third, (B1 orderly) had access came morning the next day, whereas, he worked the hallway as a orderly.

40. I, along with Surrancy, complied when released from Confinement on Feb. 11th, 2022, whereas, I feared receiving a Disciplinary Report or threatened by V-Dorm / Confinement Unit Manager "Lee" just 3 days earlier etc. (on Feb. 8th, 2022)

41. Consequently, upon me and Surrancy re-entering B4, the inmates (told him he had to get out of the dorm etc.). Within 10-15 minutes of our return, approx 4-5 inmates, (two of which were involved in the Feb. 5th, 2022 incident, yet not taken to Confinement by Snell) came to my cell, #114.

42. At this time I'd just went to my assigned cell and began unpacking. However, upon entering, a few moments after me, said individuals attacked me with kicks, closed fist punches, and an ice-pick type weapon identical in make / model as the one utilized upon me during the Feb. 5th, 2022 incident.

43. Following said attack on Feb. 11th, 2022, I was advised by said individuals, that if I were to live / remain on the compound in peace, I'd better take my ass-whipping like a man, and keep my mouth shut about it etc. I'd agreed that I would keep quiet about it, I agreed that I'd keep quiet about the attack, in order to avoid further assault / injury to my person.

44. During said attack, I received an approx. 5½ inch laceration on my left arm from the ice-pick type weapon, and additional injuries to my neck, back, and left shoulder...

45. On Feb. 12th 2022, at approx. 9:00-1030am, in the day room of B4, inmate Ricks struck me with a closed fist in my neck/shoulder area, then drew a homemade shank from his waistband, and demanded that I check-in/get on the door & out of the dorm, or die...

46. Inmate Ricks's attack upon me, had been at the directions of the hallway orderly from B1 (who'd been involved in, and stabbed me during the Feb. 5th 2022 incident, and not placed in confinement). I personally heard the B1 orderly command inmate Ricks; "Get him out of here.... We his ass up, or I'ma wet yo ass up!"

47. At this time, and following Ricks' assault upon me, several other inmates from another housing wing (B1 orderly included) advanced towards me with weapons, yelling threats- at which time, I backed down into the corner by my cell #14, in order to prevent their attack.

48. During said advance towards me, inmate Matthew Felder intervened on my behalf, which seemed to quell the situation, whereas, he, along with the other 3 to 4 individuals entered cell #116 (where inmate Ricks was housed) to talk the situation over.

49. Shortly thereafter, they came to the door of cell #116 and called out to me, stating; "...hey, it's over with". "Come on, we talking it out like men etc." Although reluctant at first, I eventually agreed to come talk with them, in an effort to obtain a truce, so I crossed the dayroom and entered cell #116 with the impression we'd talk the matter over & peace-treaty....

50. However, upon my entering cell #116, another inmate from B3 entered the cell brandishing two shanks / weapons etc. (one in each of his hands), thereby turning the situation hostile once again. At this time, and with my being distracted by the inmate brandishing the shanks, the B1 orderly struck me in the face, then placed me in a headlock / chokehold, while Ricks and the inmate from B3 held Fetler at knife point, and at one time, stabbing him in the side / back.

51. I eventually broke free from said headlock / chokehold, at which time me and Fetler were able to create a little space between them & us, until they eventually exited the cell and returned to their quads.

52. As a result of the strike / blow from Ricks & the tussle to get free from the headlock / chokehold placed upon me by the B1 orderly etc., I received injuries to my left eye, neck, back, and left shoulder.

53. On Feb. 22nd, 2022, at approx. 3:30 - 4:30 pm in the dayroom of B4 dormitory, inmate Ricks assaulted / chased his cellmate around the tables with a homemade shank / weapon. This took place in the open dayroom, with staff watching from the booth / officer's station, yet, no intervention from staff, and no search for the weapon involved, as these type of incidents regularly occur in B-Dorm, and are overlooked, swept under the rug, or flat out ignored by witnessing staff.

54. On Feb. 24th, 2022, at approx. 2:50 - 3:12 pm in B4 dormitory, Sergeant Kyles, and Officer L. Grainer watched, and failed to intervene, as two inmates fist fought, literally knocking each other out at times, for an extended period, in the open dayroom area.

55. Both inmates were seriously injured, whereas, you can see on camera, other inmates cleaning up their blood, as they prep-

ated for round two, then three etc... Infact, the black male had to go to medical the next day, with an apparently broken jaw etc. The white male patched the deep laceration he'd suffered beneath his left eye, alone, and therefore, did not get any professional medical attention etc...

56. Sergeant S. Kyles, and Officer L. Gainer were aware of said substantial injuries to said inmates, whereas, in addition to "watching" the entire fight between the two, each staff member had talked to said inmates "seperately", on camera, in B4, face to face Later on in the day at some point etc. No report was written, no medical treatment / medical aid rendered, or sought by said staff for said inmates that day, whereas, such incidents regularly occurred and were overlooked / ignored by witnessing staff in B-dormitory.

57. On Feb. 25th 2022, Colonel H. Hodges (chief of security) summoned for me, and upon my arrival to the "DIC" office wherein he awaited me, he picked two grievances up from the desk and asked me: "Did you write these?" — I asked him to Let me see them, which he did, and upon my verifying that they were in fact the ones I'd written, I replied: "Yes sir, I did". At which time I'd handed them back to him.

58. The grievances Col. Hodges possessed were the precise grievance(s) I'd placed in the grievance box (B-Dorm Hallway) on Feb. 14th, 2022 against S. Kyles / L. Gainer Log # 2202-159-045; and Sergeant Owens Log # 159-2202-0084... SEE Exhibit — E & H

59. Said grievances placed Col. Hodges on notice of the Feb. 5th 2022 incident which occurred in B4-dormitory, wherein, I'd been stabbed etc. during an attack upon my person, consequent of an officer sanctioned assault upon another inmate. At this time, Col. Hodges inquired: "and you're still in that dorm?" To which I'd replied: "Yes sir. Lt. Snell placed me

back in there upon releasing me from Confinement on Feb. 11th, 2022, and I've been attacked 3 more times since. In fact, one of those attacks occurred within 10-15 minutes of me walking back through the door of B4, by 4 to 5 inmates (two of which were involved in the Feb. 5th, 2022 incident), and with a weapon/shank ___ Lt. Snell didn't place either of them in confinement, nor did she even search for any of the weapons used that day. I was attacked again the very next day (Feb. 12th, 2020), by one of the guys involved in the Feb. 5th, 2022 incident, and one of his associates etc. ___ At Lt. Snell had failed to place him (B1 orderly) in confinement also on Feb. 5th, 2022.

60. At this time, Colonel Hodges replied; ..."Well, at this point, I've got two options'. If you dismiss these grievances, this whole thing goes away, as in, it never happened..." On the other hand, if you pursue these grievances, I go to Lock you up, and transfer you..."

61. In response to said ultimatum, I advised Col. Hodges that "under no circumstances would I dismiss said grievances; and that more had been submitted, and on the way to his desk."... I'd further advised Col. Hodges that in lieu of the repeated attacks upon my person, stemming from the Feb. 5th, 2022 incident, and conduct of S. Kyles & L. Gainer, a transfer was clearly in order, and technically, the only way to ensure my safety etc.

62. At this time, Col. Hodges advised me that Sergeant Kyles & L. Gainer had a reputation for sanctioning assaults, by their orderlies in B-Dorm, and that they'd eventually get what's coming to them.

63. In response to said comment concerning said staff, I advised Col. Hodges that Kyles & Gainer were both presently at work, supervising B-Dormitory, and that I was concerned about my property/Legal work

were they allowed to be the ones to inventory my property upon my being placed in confinement. At this time, Col. Hodges told me to go ahead and go back to the dorm, and pack my belongings. He advised me to be ready, that he'd send someone to get me after Count.

64. I did as instructed by Col. Hodges, yet, no one came to get me as he'd said etc. I'd waited all the way to the next morning, with property packed.

65. On Feb. 21th 2022, (following Col. Hodges's failure to confine me) the ex. B4 Hallway orderly entered Quad 4 of B-dorm with approximately 4-5 of his associates etc., and came to my cell # 114, wherein, I'd locked myself by shutting the door, at which time he'd tried to gain entrance, by repeatedly yanked on the door handle. This B4 orderly was one of my assailants during the Feb. 5th 2022 assault on me.

66. After being unsuccessful at his attempt to gain entrance, and access to me (due to my locking myself in the room), he remained outside of the door for a brief period, at which time he'd yelled: "Whatever you said to Colonel Hodges, and in those grievances about Kyles, and Grainer, you'd better recant! Me and my brothers came down here to wipe your ass down! I let you off easy last time, I should've finished you off... Matter of fact, it's bout Count now, but we'll be back after Count to Litestlight your ass! This occurred at approx. 9:45 -10:50 AM.

67. However, after count, and before jail inmate/inmates could return to make good of said threat etc., an officer entered the quad (B4) ordered me to pack, and took me to the O.I.C's office where I'd spoke with Lt. Dean. Following a disturbing conversation with him, demanded that I be placed under protective management. SEE Exhibit - C

68. Between September 15th, 2021, and March 19th, 2022, the Warden, Scott Middlebrooks was Chief Policy Maker at Graceville Correctional Facility etc., and therefore responsible for the overall day-to-day operations and policy implementation for said facility. During said period. Mid Jan. – March, 2022 particularly, there was a sharp increase in armed assaults at Graceville Correctional Facility, (B-Dormitory, Quad 4 especially). Said increase in violent / armed assaults were "widespread", in that said acts were rampant & regular occurances of day to day life at Graceville, Known to / familiar to inmates & staff along with them, to include Warden Middlebrooks.

69. In response to said increase in armed assaults etc., at Graceville, two housing Units (Unspecified, but not B-Dorm) were searched at which time, Warden Middlebrooks posted an e-mail on the Kiosk advising in pertinent part "that several items of contraband had been recovered during the search, that will make Graceville a safer place" … "Some of the inmates do not want to live in a safe environment". … "there are still some of you who refuse to better themselves and comply with rules and regulations.     SEE Exhibit -B

70. In his message via the Kiosk, posted 3-9-2022, merely warned of CM recommendations for those contraband was recovered from, … continued shakedowns till those involved has been rounded up and placed in confinement / transferred etc.. However, no action / steps were taken by Warden Middlebrooks to curb / deter staffers sanctioning, facilitation and participation of said assaults. despite his knowledge via rumors, inmate grievances, and a staggering volume of protective Management requests indicating staff participation & acquiesance in said assaults. …

71. Moreover, at no times during said 6 month time period (that I was housed at Graceville in B4) did Warden Middlebrooks order, or

direct a "mass search" of B-Dormitory. Specifically in search for weapons, despite his knowledge of: #1 - the existence, and use of weapons at Graceville, #2 - No "metal detector" / "security device erect" at center-gate (or other strategic points within the facility), and #3 - the fact that B-Dormitory inmates "interacted daily" with other inmates from other dorms, at work, school, medical, library, and various other times and programs etc., which presented opportunity for the exchange, and free flow of weapons such as those brandished / utilized on Jan. 20th, Jan. 21st, Feb. 5th, Feb. 11th, Feb. 12th, and Feb. 22nd 2022 (in Quad 4. of B-Dormitory alone) ...including the items (Warden mentioned) found in search.

72. Additional notice was provided to Warden Middlebrooks, and Col. Hodges regarding the "unconstitutional practices" of staff sanctioning / participation, and or acquiescence in, assaults such as those listed in paragraph #12, #14, #15-18, #42, #45, and #50, of this complaint, whereas, said acts / occurrences were "obvious", "flagrant", "rampant", and of continued duration. Such that a reasonable supervising official would have been on notice of the need to correct said "unconstitutional" acts / violations, and punish those responsible.   SEE Exhibit - C & D

73. Niether, Warden Middlebrooks, nor Col. Hodges acted so as to curb, correct, or admonish the unconstitutional acts (unconstitutional acts, or the resulting deprivations) being comitted by B-Dormitory staff, to include S. Kyles & L. Gainer. despite being on notice / aware they'd acted unconstitutionally, and would continue to do so in the future if presented the opportunity to do so.

74. Therefore, Warden Middlebrooks, and Col. Hodges acted with "deliberate indifference" (in their supervisory role), by adhereing to a custom / practice, which entailed acquiesance in, and failing

to correct, or punish. B-Dorm Staff, to include S. Kyles & L. Gainer, for unconstitutional acts / deprivations being committed against the inmate population in B-Dormitory. Said lack of oversight, absence of corrective measures, and acquiescance in said conduct, ultimately resulted in the proximate cause of the violation of my 8th Amendment rights, and substantial injury to my person on Feb. 5th, 11th, & 12th, 2022.

'75. Moreover, Warden Middlebrooks (as Chief policy maker of Graceville Correctional Facility), was "deliberately indifferent" to the inmate population's right to personal safety, by his failure / decision not to implement necessary security measures, such as a "Stationary metal detector" at center gate, or other strategic points, despite his knowlege of the existence of weapons, and the inevitable exchange of said items from inmate to inmate, and Dorm to Dorm, in the absence of such security measures.

'76. Warden Middlebrooks' "deliberate indifference to the apparent need to implement said security measures / device, amounted to a violation of my 8th Amendment rights to personal safety, and constituted the proximate cause of the injuries I sustained on Feb. 5th, Feb. 11th, and Feb. 12th, 2022.___

'78. All defendants as named within this instant complaint, acted "under color of state law", as they exercised "state action", by and through virtue of their employment / proxy with MTC / Graceville Correctional Facility, (a private contractor, contracted by Florida D.O.C., an agency of the state of Florida) to deprive me of my rights as guaranteed, and legally protected, by the 8th Amend. of the U.S. Constitution.

'79. All defendants named within this instant complaint, personally participated / committed acts, and or omission which constituted

"deliberate indifference" to my federally protected rights as guaranteed by the 8th Amendment of the U.S. Constitution. Said calloused indifference to my rights as aforementioned constituted the proximate cause of the injuries sustained to my person ... As set forth against each defendant.

80. Moreover, all defendants as named within this instant complaint, personally participated / committed acts, or omission which violated D.O.C. rules, as mandated per F.A.C. 33-208.002 (3) + (24), and F.A.C. 33-205.101(3), as stated against each defendant individually.

81. During the Feb. 5th, 2022 attack upon me while inside of cell# 206, I:

    (a) Felt extreme pain in my left side + right hip upon being stabbed with a nice-pick type weapon;

    (b) Felt extreme pain in my head + upper torso area from repeated blows from my attackers (with closed fists);

    (c) Nearly blacked out from a strong blow to the back of my head;

    (d) Was horrified; and

    (e) furious at one point.

82. Following the Feb. 5th attack upon me, continued complication include, but are not limited to:

    (a) Severe headaches;

(b) ... excruciating neck pain;

(c) ... Short-term memory loss;

(d) ... black-outs;

(e) ... Spells of confusion + disorientness

(f) ... paranoia; and

(g) ... fear & trust for prison staff.

83. During the time period of Feb. 5th – Feb. 7th, 2022, and due to the denial/delay of medical treatment caused by Lt. Snell, Nurse M. Thomas, and Sergeant (now Lieutenant) Owens, I endured/suffered severe pain and discomfort from the two stab wounds (left upper side/rib cage & right hip). I was also stressed out/deeply afraid that I had internal bleeding, and curious of the inhumane treatment I was receiving, due to no fault of my own.

84. During the Feb. 11th, 2022 attack upon me while inside of cell #114, I:

(a) ... felt severe pain in my head & torso area/rib cage, due to repeated blows (with closed fists), and kicks, from my assailants;

(b) ... felt extreme pain in my left arm, upon being stabbed with an ice-pick type weapon, which went in, and dragged along my arm, leaving an approx. 5½" laceration;

(c) ... was horrified beyond belief; and

(d) Was severely humiliated, at being attacked, then ordered by my assailant, to keep quiet about it.

85. Following the Feb. 11th 2022 attack upon me, continued complications include, but are not limited to:

(a) Severe headaches;

(b) excruciating neck + back pain;

(c) Memory loss (periotic/short-term);

(d) black-outs;

(e) Spells of confusion/disorientness;

(f) paranoia;

(g) Claustrophobia/fear of being boxed in, or cornered etc.;

(h) low self-esteem due to the ugly scar on my left arm.

86. During the Feb. 12th 2022 attack upon me (in the dayroom of B4), and while inside of cell #116, I:

(a) Felt extreme pain in my left-eye, neck, back, and left shoulder;

(b) blacked out momentarily; and

(c) Was horrified/feared death by strangulation.

87. Following the Feb. 12th, 2022 attack upon me, continued complications include, but are not limited to:

(a) Excrutiating neck, back, and left shoulder pain;

(b) paranoia;

(c) Clostraphobia / fear of being cornered, or boxed-in, etc.;

(d) fear of trust for other inmates; and

(e) Constant nightmares.

88. Plaintiff has tetforth sufficient facts to support / establish a plausible claim against each named defendant, or limited discovery process will produce admittible / relevant material, and/or additional facts, which supports plausibility of Plaintiff's claim(s) as attempted to be broughtforth via this action / complaint.

## V. STATEMENT OF CLAIMS

State what rights under the Constitution, laws, or treaties of the United States have been violated. Be specific. If more than one claim is asserted, number each separate claim and relate it to the facts alleged in Section IV. If more than one Defendant is named, indicate which claim is presented against which Defendant.

1. Defendant MTC et al. / Graceville Correctional Facility violated Plaintiff's rights as guaranteed by the 8th Amendment of the U.S. Constitution, by:

(a). Being deliberately indifferent to, and having Plaintiff under unsafe / inhumane conditions of confinement. See Section IV.

SEE "Attachment(s)" / Continuation of Section V. STATEMENT OF CLAIMS ⟶

## VI. RELIEF REQUESTED

State briefly what relief you seek from the Court. Do not make legal arguments or cite to cases/ statutes. If requesting money damages *(either actual or punitive damages)*, include the amount sought and explain the basis for the claims.

I seek judgment against all named Defendants, individually and severally, in the sum of $2,000,000 (two million dollars) per Defendant, for said violation(s)/injurie(s), and the following damage(s): Compensatory; Punitive; Cosmetic; Discretionary/pain & suffering; mental anguish; emotional distress; Cost of Suit; Declatory Judgment...

SEE ATTACHED ⟶

NDFL Pro Se 14 (Rev 8/21) Civil Rights Complaint Prisoner
Clerk:Admin/Official/Forms

**ATTENTION:** *The Prison Litigation Reform Act ("PLRA") does not permit awards for punitive or compensatory damages "for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act . . . ." 42 U.S.C. § 1997e(e).*

## VII.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

The PLRA requires that prisoners exhaust all available administrative remedies *(grievance procedures)* before bringing a case. 42 U.S.C. § 1997e(a). **ATTENTION:** *If you did not exhaust available remedies prior to filing this case, this case may be dismissed.* All Available Admin. Remedies Exhausted". See Attached Exhibit(s) A—H (3)

## VIII.  PRIOR LITIGATION

**ATTENTION:** *The "three strikes rule" of the PLRA bars a prisoner from bringing a case without full payment of the filing fee at the time of case initiation if the prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).*

paragraph(s) #1-88

(b). Breach of Contract, as encompassed by F.A.C. 33-205.101 (3) & (7). See Section IV., paragraph(s) #1-88

2. Defendant (Warden) Scott Middlebrooks violated Plaintiff's right as guaranteed by the 8th Amendment of the U.S. Constitution, by:

(a). Being deliberately indifferent (in his role as chief policy maker), by failing to implement necessary security measures within the prison, known to him to be essential to the safety / welfare of the inmate population. See Section IV., paragraph(s) #1-2, 6, 8-18, 42, 44-45, 47, 50, 52-53, 68-71, 75-88

(b). Being deliberately indifferent (in his supervisory role), via lack of oversight, and acquiescence in widespread abuses / unconst- itutional acts, committed by subordinate staff. See Section IV., paragraph(s) #1-2, 6, 8-18, 20, 22-25, 27-39, 42, 44-47, 50, 52-74, 78-88

3. Defendant (Colonel) H. Hadley violated Plaintiff's right as guaran- teed by the 8th Amendment of the U.S. Constitution, by:

(a). Being deliberately indifferent (in his supervisory role as chief of security), by failing to take corrective action, and acquiescence in widespread abuses / unconstitutional acts, committed by subor- dinate staff. See Section IV., paragraph(s) #1-2, 6, 8-18, 20, 20-25, 27-39, 42, 44-47, 50, 52-67, 72, 78-88

(b)... Being deliberately indifferent to Plaintiff's right to personal Safety. See Section IV., paragraph(s)#1-2, 6, 10, 57-67, 78-80, 88

4. Defendant (Lieutenant) Snell violated Plaintiff's rights as guaranteed by the 8th Amendment of the U.S. Constitution, by:

(a)... Being deliberately indifferent to, and failing to protect Plaintiff from serious injury / the risk of dangerous Conditions (known to her) within the prison. See Section IV., paragraph(s)#1-2, 6, 10, 22-25, 39-52, 78-80, 84-88

(b)... Being deliberately indifferent to, and denying / causing delay in treatment, for Plaintiff's objectively serious injuries / medical needs. See Section IV., paragraph(s)#1-2, 15-18, 22-24, 29-32, 78-80, 83-88

5. Defendant (now Lieutenant) Dufort violated Plaintiff's rights as guaranteed by the 8th Amendment of the U.S. Constitution, by:

(a)... Being deliberately indifferent to, and denying / causing delay in treatment, for Plaintiff's objectively serious injuries / medical needs. See Section IV., paragraph(s)#1-2, 15-18, 27-33, 78-80, 83, 88

6. Defendant (Nurse) M. Thomas violated Plaintiff's rights as guaranteed by the 8th Amendment of the U.S. Constitution, by:

(a)... Being deliberately indifferent to, and denying treatment for,

Plaintiff objectively serious injuries / medical needs. See Section IV., paragraph(s) #1-2, 15-18, 23, 26, 32-33, 78-80, 83, 88

7. Defendant (X-Dorm Unit Manager) Lee violated Plaintiff's rights as guaranteed by the 8th Amendment of the U.S. Constitution, by:

(a)... Being deliberately indifferent to, [and failing to protect Plaintiff from] serious injury / the risk of dangerous conditions (known to him) within the prison. See Section IV., paragraph(s) #1-2, 6, 10, 34-38, 43, 45-52, 78-80, 84-88

8. Defendant (Sergeant) S. Kyles violated Plaintiff's rights as guaranteed by the 8th Amendment of the U.S. Constitution, by:

(a)... Being deliberately indifferent to, and failing to protect Plaintiff from, serious injury / the risk of dangerous conditions (known to her) within the prison. See Section IV., paragraph(s) #1-2, 15-21, 78-82(a), 88

(b)... (State Law)... Aiding and Abetting an Attack / Battery. See Section IV., paragraph(s) #1-2, 15-21, 78-82(a), 88

9. Defendant (officer) S. Gainer violated Plaintiff's rights as guaranteed by the 8th Amendment of the U.S. Constitution, by:

(a)... Being deliberately indifferent to, and failing to protect Plaintiff from, serious injury / the risk of dangerous conditions (known to her) within the prison. See Section IV., paragraph(s) #1-2, 15-21, 78-82(a), 88

Continuation of Section V., "Statement of Claim(s)"  page #7(a)

(b).. (State Law).. Aiding and Abedding an Attrault / Battery.
   See Section IV., paragraph(s) #1-2, 15-21, 78-82(a), 88

              .. End of Section V., "Statement of Claim(s)"

In addition to the afore requested "monetary damages," Plaintiff hereby seeks: "Declatory Judgment" from this Court, in that, it be decided, and declared, for all purposes, that Plaintiffs 8th Amend. rights were in fact violated by said named Defendant(s), individually....

--End of SECTION VI.]

A. To the best of your knowledge, have you had any case dismissed for a reason listed in § 1915(g) which counts as a "strike"?

☐ YES  ☑ NO

If you answered yes, identify the case number, date of dismissal and court:

1. Date:_____ Case #: _____

   Court: _____

2. Date:_____ Case #: _____

   Court: _____

3. Date:_____ Case #: _____

   Court: _____

*(If necessary, list additional cases on an attached page)*

B. Have you filed other lawsuits in either *state or federal court* dealing with the same facts or issue involved in this case?

☐ YES  ☑ NO

If you answered yes, identify the case number, parties, date filed, result *(if not still pending)*, name of judge, and court for each case *(if more than one)*:

1. Case #:_____ Parties: _____

NDFL Pro Se 14 (Rev 8/21) Civil Rights Complaint Prisoner
ClerkAdmin/Official/Forms

Court:_____ Judge: _____

Date Filed:_____ Dismissal Date *(if not pending):* _____

Reason: _____

2.  Case #:_____ Parties: _____

Court:_____ Judge: _____

Date Filed:_____ Dismissal Date *(if not pending):* _____

Reason: _____

C. Have you filed any other lawsuit in federal court either challenging your

conviction or otherwise relating to the conditions of your confinement?

☐ YES  ☑ NO, Only $2254 in re: Criminal Conviction (state)

If you answered yes, identify all lawsuits:

1.  Case #:_____ Parties: _____

Court:_____ Judge: _____

Date Filed:_____ Dismissal Date *(if not pending):* _____

Reason: _____

2.  Case #:_____ Parties: _____

Court:_____ Judge: _____

Date Filed:_____ Dismissal Date *(if not pending):* _____

Reason: _____

3.  Case #:_____ Parties: _____

Court:_____ Judge: _____

Date Filed:_____ Dismissal Date *(if not pending)*: _____

Reason: _____

4. Case #:_____ Parties: _____

   Court:_____ Judge: _____

   Date Filed:_____ Dismissal Date *(if not pending)*: _____

   Reason: _____

5. Case #:_____ Parties: _____

   Court:_____ Judge: _____

   Date Filed:_____ Dismissal Date *(if not pending)*: _____

   Reason: _____

6. Case #:_____ Parties: _____

   Court:_____ Judge: _____

   Date Filed:_____ Dismissal Date *(if not pending)*: _____

   Reason: _____

*(Attach additional pages as necessary to list all cases.* **Failure to**

**disclose all prior cases may result in the dismissal of this case.)**

# IX. CERTIFICATION

I declare under penalty of perjury that the foregoing (including all

continuation pages) is true and correct. Additionally, as required by Federal

11

the prison's mail system for mailing on the 26th day of September,

20 22.

Signature of Incarcerated Plaintiff: _____

NDFL Pro Se 14 (Rev 8/21) Civil Rights Complaint Prisoner
Clerk/Admin/Official/Forms

Rule of Civil Procedure 11, I certify that to the best of my knowledge, information, and belief, this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to timely notify the Clerk's Office if there is any change to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date: 9-26-22 Plaintiff's Signature: Deonley Lonte Johnston

Printed Name of Plaintiff: Deonley Lonte Johnston

Correctional Institution: Walton Correctional Institution

Address: 691 Institution Road,

Defuniak Springs, FL. 32433

I certify and declare, under penalty of perjury, that this complaint was (*check one*) ☑ delivered to prison officials for mailing or ☐ deposited in

DEONSEY LONTE JOHNSON #P13472 / E1-136$^S$
WALTON CORRECTIONAL INSTITUTION,
691 INSTITUTION ROAD,
DEFUNIAK SPRINGS, FL 32433

" LEGAL MAIL "
#1 of 3

Mailed From A
Correctional
Institution

US POSTAGE — pitney bowes
$ 009.25$^0$
ZIP 32433
02 7H
0000670546    SEP 26 2022

PRIORITY MAIL

SEP 2 8 2022

" CLERK,
U.S. DISTRICT COURT,
111 N. ADAMS STREET,
TALLAHASSEE, FLA. 32301-7730

Provided to Walton CI
On 4-22-2020 for Mailing
                Date
By (officer initials) ___me___